Wood v. Louisville and Nashville R. Co., 183 Ill. App. 543.

misleading where the jury were accurately informed as to what they must find from the proofs.

8. INSTRUCTIONS, § 95*—*when instruction as to credibility of witnesses not objectionable as allowing unlimited latitude.* Instruction telling the jury to give the testimony of witnesses "such weight and credit as they think the same justly entitled to receive," *held* not objectionable as allowing jury unlimited latitude in judging of credibility of witnesses and not requiring them to base their judgment on the evidence, where the instruction distinctly tells them that they must fairly and impartially weigh and consider all the evidence and circumstances in proof.

9. NEGLIGENCE, § 213*—*when instruction not misleading.* Instruction that question of negligence of defendant and due care on part of deceased are to be determined from the evidence, *held* not misleading because it does not inform the jury of the law applicable to the case where the theories of the law applicable are given in other instructions.

## Eva Wood, Appellee, v. Louisville and Nashville Railroad Company, Appellant.

1. CARRIERS, § 476*—*sufficiency of the evidence.* In an action for injuries sustained by plaintiff as a passenger at the time of a collision between defendant's trains, evidence *held* sufficient to warrant jury in finding that plaintiff was injured at the time and in the manner claimed.

2. CARRIERS, § 473*—*when opinion as to extent of injuries not rendered inadmissible.* Opinions of physicians that plaintiff's stunted growth was caused by the injuries found upon her, *held* not inadmissible because they infer that plaintiff was really injured as claimed.

3. CARRIERS, § 474*—*when statement of conductor inadmissible.* In an action for injuries to a passenger resulting from a collision, failure to exclude evidence of what the conductor said after the collision *held* not material error.

4. PLEADING, § 253*—*when declaration may be amended.* Where the case is tried as though damages for stunted growth of plaintiff were included in the claim for damages, declaration may be amended after verdict to include such damages.

5. DAMAGES, § 213*—*when instruction on right to recover for loss of ability to perform usual duties not improper.* In an action by a married woman for personal injuries sustained by her at the time she was under age, an instruction that she may recover for

loss of ability to perform her usual duties *held* not objectionable for not excluding loss of earnings prior to plaintiff's majority and since her marriage.

Appeal from the City Court of East St. Louis; the Hon. ROBERT H. FLANNIGAN, Judge, presiding. Heard in this court at the March term, 1913. Affirmed. Opinion filed October 9, 1913. *Certiorari* denied by Supreme Court (making opinion final).

JAMES M. HAMILL and CHARLES P. HAMILL, for appellant.

D. J. SULLIVAN, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Appellee brought this suit to recover damages on account of severe personal injuries alleged to have been received by her on July 7, 1907, while she was riding on one of appellant's passenger trains near Poindexter, Kentucky. There is but one count in the declaration and it charges that appellant so negligently managed certain of its trains running in opposite directions, on the same track, that they collided and ran together whereby appellee, while being carried as a passenger upon one of said trains, was thrown with great force and violence on the floor of the car, in which she was being carried, and some heavy object was thrown upon her, seriously injuring her back, stomach, limbs and nervous system. There was a plea of the general issue, a verdict for two thousand five hundred dollars, a motion for a new trial, which was overruled, and a judgment for the amount of the verdict.

Appellant urges as reasons why this judgment should be reversed, that the verdict is against the weight of the evidence and that the court below erred in its rulings upon the evidence and in instructing the jury. Appellant does not deny that the collision, in which appellee claims to have been injured, really occurred, but insists that it was of so slight a nature

that appellee could not have been seriously injured by reason thereof, and that all the facts and circumstances in evidence show it to be unreasonable that appellee could have been injured at the time and in the manner she claims.

It appeared from the testimony of appellee and other witnesses introduced in her behalf, that on the afternoon of the day in question, she and her mother left Cincinnati on one of appellant's passenger trains to go to Jeffersonville, Kentucky. Shortly after leaving Poindexter, and while yet moving slowly, a train on which she was riding collided with one coming in the opposite direction. Appellee, who was then thirteen years of age, had left her home in Granite City, Illinois, on the day before, with her mother to visit relatives near Jeffersonville. At the time of the collision, she was attempting to raise the car window and was, by the impact, thrown violently to the floor and the back of one of the car seats fell over on her, bending her forward so that she could not get up. A passenger or train man came to her assistance and extricated her from the position she was in. Some one bathed her head and face and she was then taken out of the car to the roadside. After a wait of some two or three hours she was led back to the train which proceeded on its way with the same engine, which though injured was able to pull the train. Appellee and her mother testified that windows were broken out and a lamp broken at the time of the collision and that other persons besides appellee and her mother were hurt. A number of witnesses who were passengers on the train at the time, and whose depositions were taken by appellant, testified the impact of the trains at the time of the collision was but slight and that they did not know of glass or the lamp being broken or any one being injured. It was not shown, however, that these witnesses were in the same car with appellee. She and her mother left the train at Mt. Sterling, where they stayed all night and the next day they obtained a conveyance and drove some

five miles in the country, to the home of appellee's aunt, Mrs. Curtis, where they remained visiting about two weeks. During their visit there they made two trips in a buggy to the home of a cousin named Wilson, some two and a half miles distant. Appellee claims that in the collision she received a rupture of the umbilicus and an injury to her spine and that while at her aunt's she suffered from these injuries and was part of the time confined to her bed. On their way home at the end of the two weeks, appellee and her mother spent two days in Cincinnati, where appellee was confined to her bed and her mother procured medicine for her. Upon her return home she continued to grow worse and a physician who made an examination of her early in September, 1907, found bruises over her back, soreness through the abdominal regions and a rupture of the umbilicus. This physician testified that up to the the time she received these injuries, she was in good health and of normal size but that since then she had been in poor health and that nearly five years later, at the time of the trial, she had not grown any larger and he attributed her stunted condition to the injuries he found. In the fall of 1907 she attended school at home and while the teacher's record shows a fairly good attendance, her testimony was that she would go in the morning and the teachers would have to excuse her on account of being sick and send her home, and she said, in explanation of the record, that the teacher often permitted her to go home during the day after the school register had shown she was present. As to whether she was able to be up and about or was really confined to her bed most of the time during the first few months of school there was quite a controversy, but it appears that about Christmas time she was unable to attend school longer and was then confined to her bed for some nine weeks after which, on the advice of her physician, she was sent to Colorado for her health where she remained about three months. When she returned the next fall, her mother sent her

to a boarding school in Alton but her health was so poor she was unable to continue her studies so she soon returned home. At the time of the trial she weighed but seventy-two pounds and could wear the same clothes she did at the time of the injury, more than five years before, when she was but thirteen years of age, and during that time she had not been able to attend to her household duties.

The evidence further showed that in October, 1911, appellee was married and that she was living with her husband at the time of the trial. Appellant claims the fact that no physician was called to attend to appellee from the time of the injury in July until the following September, tends to discredit the testimony of appellee and her mother as to the happening of the injury, or that, if it did happen, it was of a serious nature. Depositions of four of the Wilsons, relatives of appellee, visited by her and her mother on two different days while they were in Kentucky, were taken. Two of them testified that they never heard appellee mention being in a railroad wreck while she was at their house. Another testified that appellee never spoke to her of being in a wreck but she heard her speak to another relative of being in a wreck; that witness never heard her complain of being ill. The fourth Wilson testified that she heard appellee say something one evening about being "shook up" but did not hear her say she was hurt.

Appellee and her mother testified that they did talk to the Wilsons about the wreck and about their injuries and that they told them to bring suit against the railroad company and they would help. Appellee's mother further testified that when she went back the last time, the Wilsons told her they had seen the railroad agent, and they would not help her at all.

It was clearly shown by the proofs that appellee was in a normal physical condition just prior to the time she claims to have been injured by the collision, and that shortly thereafter she became sickly, emaci-

ated and ceased to grow; that her back and spine have been in some way injured, her umbilicus ruptured and that, at the time of the trial, nearly five years later, she was stunted and had not reached her natural growth; and that she had been for a long time, to a greater or less extent, under the care of physicians. It also appeared from the testimony of witnesses on both sides of the case that a collision of the trains on appellant's road occurred at the time claimed by appellee, but whether the impact of the trains was of sufficient violence to cause any serious disturbance or annoyance to the passengers, and whether appellee was seriously injured at that time, were mooted questions. No one of the train crew having charge of the train on which appellee was riding was called as a witness by either side, to show the extent of the collision, but the evidence upon the whole was sufficient to warrant a jury in finding that appellee was injured at the time and in the manner claimed by her.

The declaration, as originally filed, claimed no damages for stunted growth of appellee, but evidence on this subject, having appeared, the case was tried as though such damages were included and, under the circumstances, the court properly permitted the declaration to be amended to conform to the evidence, although such amendment was not made until after verdict.

In regard to the evidence appellant complains that physicians were permitted to state as their opinion, that appellee's arrested growth was caused by the injuries they found on her, it being contended that the inference from the answers was that she was really injured as she claimed, by a collision of appellee's trains at the time in question. We do not think the objections of appellant to this evidence were well founded. None of the physicians claim to know on what occasion appellee was injured or what caused the injuries to her but they testified simply as to the nature and extent of the injuries which they found

upon her person, and such testimony was pertinent and proper to determine the amount of damages sustained by her.

Appellant also complains that appellee was permitted to testify as to a conversation with the conductor of her train after the collision, in which he said "the other train was going a good deal faster than our train." We think this was not part of the *res gestae* and the answer might well have been excluded, but the failure to exclude was not of sufficient importance in this case to constitute material error. We have examined other objections to the rulings of the court in regard to the evidence but find they are of minor importance and that they do not call for further discussion.

The fourth instruction for appellee was upon the question of the measure of damages and, after mentioning other elements of damage, told the jury they could consider the effect the injuries suffered by plaintiff, if any, have had upon her ability to perform her usual duties since she became eighteen years of age and the effect the same will have upon her ability to labor and perform her usual duties, so far as such effect, if any, is shown by the evidence. One criticism of this instruction made by appellant is that it did not exclude from the consideration of the jury any loss of earning power which she may have suffered during her minority. We think this hypercritical, as, while the instruction does not in words exclude loss of earnings prior to appellee's majority, yet the whole purport and one of the objects of the instruction is plainly to inform the jury that they can only consider the effect of such injuries upon appellee's ability to perform her usual duties, after she had become eighteen years of age and not before. A further criticism of such instruction made by appellant is that it included a right to recover for injuries to her ability to perform her usual duties since her marriage, the claim being that the husband had the right to her services since

that time and that he alone could recover for their loss.

Appellant cites some authorities to sustain the doctrine that a wife cannot recover damages for those services to which her husband alone is entitled. The right of the husband to recover for injuries received by the wife, which impair her ability to perform those duties of which he receives the benefit, to the exclusion of the right of the wife to recover for the same, is one which is not looked upon with favor by the courts at the present time, and the wife's right of recovery for such injuries is being recognized to a greater and greater extent; but even if that doctrine should be fully recognized it cannot apply as an objection here, for the reason that the words of the instruction do not confine the same to injuries to her ability to perform duties to which her husband could be said to be entitled, but duties which are personal to herself and do not constitute a claim for loss of time.

In *City of Joliet v. Conway,* 119 Ill. 489, the plaintiff in the suit was a married woman, residing with her husband, who had done housework continuously from her marriage until she was injured, as charged, by the failure of said city to maintain in suitable repair a certain sidewalk. In that case the Court held the law to be that the damages to be recovered for must be such as the plaintiff has herself sustained, and the fact that she had a family to care for and maintain formed no proper elements for the consideration of the jury, but the Court further said: "It became of the first importance that the jury, in estimating the damages plaintiff had sustained from the permanent character of her injuries, and her disability to labor in consequence, should know her previous physical condition and ability to labor or follow the avocation in which she was engaged."

In *Chicago & M. Elec. Ry. Co. v. Krempel,* 103 Ill. App. 1, an instruction was approved, which authorized the jury to consider what effect the injuries received

by a married woman might have upon her in the future in respect to her ability to perform ordinary labor. We are of the opinion there was no error in giving this instruction nor in refusing appellant's fifth, sixth, seventh and eighth instructions, all of which embodied the theory contended for by appellant in this respect. The judgment of the court below should be and acordingly is affirmed.

*Affirmed.*